MATTHEW Z. CROTTY
Riverside NW Law Group, PLLC
905 West Riverside, Suite 208
Spokane, WA 99201-0300
Telephone: 509.850.7011

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ROLANDO HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>ADAMS COUNTY; and, RANDY FLYCT,<br><br>Defendants. | NO.<br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff, by and through his attorneys, now alleges:

**I.    PARTIES AND JURISDICTION**

1. Defendant, Adams County, Washington ("County") is a municipal government agency located in the State of Washington.

2. Defendant, Randy Flyct ("Flyct") is the Adams County, Washington prosecutor.

3. Plaintiff, Rolando Hernandez ("Hernandez"), worked in Adams County, Washington at all times relevant to this lawsuit.

COMPLAINT AND DEMAND FOR JURY TRIAL- 1

4. All acts complained of occurred within the Eastern District of Washington ("Eastern District").

5. The Federal Court for the Eastern District has personal jurisdiction over the parties and subject matter jurisdiction over the claims in this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

6. Venue is proper in the Eastern District under 28 U.S.C. § 1391(b) because the acts and omissions complained herein occurred in the Eastern District and Defendant conducts business there.

7. On October 30, 2024, Hernandez through his attorneys emailed and mailed a RCW 4.96.020 Notice of Tort Claim to the County. Sixty days have come and gone and the County, although given numerous opportunities to remove Hernandez from the *Brady* list so as to avoid a lawsuit, has done nothing resolve the issue.

## II. INTRADISTRICT ASSIGNMENT

8. This action arose in Adams County, Washington. Therefore, Hernandez respectfully requests the case be assigned to the Spokane Division of the Eastern District of Washington.

## III. FACTS

9. Hernandez re-alleges the above paragraphs as if fully set forth herein.

10. Hernandez worked as a police officer with the City of Othello ("City") from August 8, 2016, until April 7, 2022.

11. Hernandez resigned from the City on/around April 7, 2022. Hernandez resigned because the City retaliated against Hernandez for reporting sexual harassment by Seth Carlson, a former Sergeant with the Othello, Police Department.

COMPLAINT AND DEMAND FOR JURY TRIAL- 2

12. Hernandez then learned that in the July 2022 timeframe the City caused Hernandez to be placed on the Adams County, Washington Potential Impeachment Disclosure (PID) or "*Brady*" list for allegedly making false statements about Mr. Carlson's propensity to sexually harass.

13. Being placed on a *Brady* list is fatal to a law enforcement officer's career. Courts hold being placed on a *Brady* list is a legitimate reason to fire a law enforcement officer. *See e.g. McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 897 (6th Cir. 2024)("[Police Department] believed that *Brady* would require it to inform criminal defendants of [Police Officer's] history of false statements, seriously hampering [Police Officer's] ability to be a credible witness at trial. 373 U.S. at 83, 83 S.Ct. 1194. [Police Department] accordingly determined that [Police Officer] could no longer perform an essential function of his position.").

14. Hernandez subsequently sued the City of Othello for retaliation for reporting sexual harassment under state and federal law. *See Hernandez v. City of Othello,* 2:23-cv-00103-MKD (E.D. Wash. 2023). The basis for the retaliation claim was the City referring Hernandez to the Adams County Prosecutor's office for placement on the *Brady* list.

15. On February 1, 2024, Adams County, in its entity capacity, was deposed in the *Hernandez v. City of Othello* lawsuit.

16. Adams County Prosecutor Randy Flyct testified as the Fed. R. Civ. P. 30(b)(6) deponent of Adams County.

17. At that February 1, 2024, deposition Flyct was shown Adams County's July 1, 2022, Potential Impeachment Disclosure policy and that policy was marked as Exhibit 12 of the deposition.

18. Page 3 of the PID policy says "Each county prosecutor must adopt a written protocol concerning PID and must do so in consultation with law enforcement agencies. RCW 10.93.180(1)"

19. RCW 10.93.180(1)(a)(i)-(iii) provides:

(1)(a) Each county prosecutor shall develop and adopt a written protocol addressing potential impeachment disclosures pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent case law. The protocol must provide guidance for: (i) The types of conduct that should be recognized as potentially exculpatory or as creating potential impeachment material; (ii) how information about an officer or officer conduct should be shared and maintained; and (iii) <u>**under what circumstances an officer's information or name may be removed from any list of potential impeachment disclosures.**</u> (emphasis added)

20. At the February 1, 2024, deposition the following exchange occurred:

Q. Let me pull that statute up really quick. Do you see a screen shot of RCW 10.93.180?

A. I do.

Q. I want to direct you to 1A(iii), and the statute provides, "Protocol must provide guidance for among other things the circumstances and officer's name may be removed from other potential impeachment disclosures." Do you see that?

A. Um-hmm.

**Q. Just so I'm clear, the policy that we're looking at in Exhibit No. 12 has no such criteria as to when somebody can be removed from the Brady List?**

**A. Not yet.** (emphasis added)

COMPLAINT AND DEMAND FOR JURY TRIAL- 4

21. The Adams County deposition further revealed, on pages 19 and 20 of the transcript, that whenever a law enforcement agency requested a person be put on the *Brady* list it was Adams County's practice to always grant that request.

22. On September 6, 2024, the City settled Hernandez's lawsuit for $350,000.00. As part of the settlement the City agreed to write a letter to the Adams County Prosecutor's Office asking Hernandez be removed from the Adams County PID or *Brady* list.

23. The letter from the City to Adams County requesting Hernandez's removal from the PID/*Brady* list was a material part of the *Hernandez v. City of Othello* settlement.

24. Hernandez (now no longer in law enforcement) wanted to continue his law enforcement career but needed to get off the *Brady* list in order to do so.

25. Hernandez was denied employment with Union Gap Police Department because that entity's police chief told Hernandez he couldn't be hired because he was on the *Brady* list. Other employers, like the City of Yakima Police Department, have ghosted Hernandez's employment applications presumably for the same reason.

26. On September 17, 2024, the City wrote a letter to the Adams County PID Committee. That letter concluded stating, "the Othello Police Department hereby submits this formal request for Mr. Hernandez to be removed from the P.I.D. list."

27. September 30, 2024, Flyct acknowledged receipt of the September 17, 2024, letter. That same day Flyct also received a written report from former Thurston County Sheriff John Snaza which opined that the City violated its own policies in asking Adams County place Hernandez on the PID/*Brady* list.

COMPLAINT AND DEMAND FOR JURY TRIAL- 5

28. In addition to being the former Thurston County Sheriff, Snaza was the former President of the Chiefs and Sheriff's Association: point being if there was a law enforcement officer to opine that Hernandez should never have been put on the *Brady* list it was him.

29. Although on notice of the fact that the City *wanted* Hernandez removed from the PID list, that the City paid $350,000 to settle Hernandez's lawsuit, and that a former Sheriff Snaza deemed the City's request that Adams County place Hernandez on its PID list as violative of City policy and protocol, Flyct did not remove Hernandez from the PID/*Brady* list.

30. On October 10, 2024, Hernandez's agent emailed Flyct asking when a decision would be made on whether Hernandez would be removed from the PID/*Brady* list.

31. Flyct did not respond to this email.

32. On October 18, 2024, Hernandez's agent again emailed Flyct asking for an update by October 25, 2024.

33. Flyct did not respond to this email.

34. On October 30, 2024, Hernandez sent Adams County a Notice of Tort claim.

35. On October 31, 2024, Flyct called Hernandez's agent claiming that the County was still working on revising its policy to bring it into compliance with RCW 10.93.180 and that his "hands were tied" because he was waiting on guidance from the Washington Attorney General's Office.

36. On November 18, 2024, Hernandez's agent emailed Mr. Flyct a copy of the Grant County, Washington and Benton County, Washington PID policy writing, in relevant part:

COMPLAINT AND DEMAND FOR JURY TRIAL- 6



37. Flyct did not respond to the November 18, 2024, email.

38. In early January 2025 Hernandez tried to gain audience with the Adams County Commissioners to see if action could be taken on their end to get him removed from the *Brady*/PID list.

39. On January 23, 2025, Flyct called Hernandez's agent to which Hernandez's agent responded, the next day:

From: Matt Crotty <mzc@rnwlg.com>
Sent: Friday, January 24, 2025 8:53 AM
To: Randy Flyckt <randyf@co.adams.wa.us>
Subject: External:Rolando Hernandez - follow up
Importance: High

Randy,

This follows yesterday's voicemail.

You may talk to Rolando Hernandez without me for the purpose of getting him off the Brady List.

To be clear we are giving you multiple opportunities to fix this simple issue without bringing legal action against Adams County. Again, you now have a letter from the City of Othello (the entity that asked you to put Mr. Hernandez on the Brady List) asking that Mr. Hernandez be removed from the list. You have the settlement agreement from the City of Othello and Mr. Hernandez wherein the City agreed to pay $350,000 to settle Mr. Hernandez's Title VII retaliation lawsuit, the retaliation being the City requesting that Adams Co put Mr. Hernandez on the Brady List in retaliation for Mr. Hernandez complaining of sexual harassment. I have sent you two polices from other police departments that you can cut and paste to use as a process to remove people from the Brady List, a requirement that the law mandates but that Adams County does not have.

If we file suit then these many efforts to resolve this issue will be laid in the public sphere and you can then explain why tax dollars are being spent defending a unnecessary lawsuit. All Mr. Hernandez wants is to be able to continue his law enforcement career unencumbered by his name having been placed on the Brady List in retaliation for him exercising his right to complain of workplace sexual harassment.

Please fix this.

Matt

COMPLAINT AND DEMAND FOR JURY TRIAL- 7

40. On January 27, 2025, Flyct responded to the January 24, 2025, email stating, in relevant part:

- The remainder of your correspondence is not at all helpful either. It sounds as though you are trying to intimidate the PA's office into taking an action that you demand with threats of litigation against the county. We cannot, and will not, craft our PID discovery policies here because of threats and intimidation.

- I do certainly respect the fact that you are a very successful civil litigation attorney, and zealous advocate for your clients. However, I would urge you to consider that your client's issues with the county are vastly different than those he had with the City of Othello. I worry, for your client's sake, that proceeding ahead with these threats will not be of any long-term benefit to a future career in law enforcement.

- Until such time as there is a change in this threatening posture, we will not be in a position to meet with your client directly concerning this matter.

41. Flyct's January 27, 2025, email was clear: Adams County will do what it wants, when it wants, and how it wants vis-à-vis complying with state law and Hernandez better shut up if he wants off the *Brady* list.

42. On February 5, 2025, Hernandez personally appeared before an Adams County, County Commissioners' meeting, delivered a written statement that re-counted the facts alleged in the above complaint, and asked that he be removed from the *Brady*/PID list within 30 days.

43. Mr. Hernandez concluded his statement to the Adams County Commissioners stating:

> I have served my community as a police officer. I've served multiple combat tours in Iraq and Afghanistan. I continue to serve in the Washington Army National Guard.
>
> I have a letter from the entity that requested me be put on the PID list asking me to be removed. With that is evidence of a $350,000 lawsuit settlement - - - meaning that the City of Othello is tacitly acknowledging that me be put on the PID list was retaliatory. I've had my lawyers send Mr. Flyct examples of other PID policies he could cut and paste to bring Adams County's PID policy into compliance with state law.
>
> Yet nothing happens. From this inaction, coupled with Mr. Flyct's most recent email to my lawyer where he says "I worry, for your client's sake, that proceeding ahead with these threats will not be of any long-term benefit to a future career in law enforcement" I am left with the unfortunate conclusion that Mr. Flyct is either refusing to remove me from the PID list because of my former association with the Othello PD or it is in retaliation for me repeatedly exercising my First Amendment rights in highlighting Adams County officials like Mike Garza and/or Dale Wagner that Adams County's PID policy is not in compliance with the law and Mr. Flyct is responsible for the policy not being in compliance.
>
> I humbly ask you order Mr. Flyct to bring Adams County's PID policy in compliance with RCW 10.93.180(1)(a)(iii) and remove me from the PID list within 30 days.

44. As of the date of this complaint neither Flyct nor Adams County has responded to Hernandez's request.

### IV. CLAIMS

*Cause of Action No. 1 - Violation of First Amendment Rights – All Defendants*

45. Hernandez reincorporates and reasserts the above paragraphs as if fully set forth herein.

46. The First Amendment allows citizens (a) the right to file lawsuits (b) the right to petition the government for redress of grievances, (c) the freedom to

COMPLAINT AND DEMAND FOR JURY TRIAL- 9

associate with their employer, and (d) the right to threaten to initiate litigation and to exercise all of those rights free of retaliation.

47. "The right to petition the government extends to the courts and, thus, includes the right to file certain lawsuits." *Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*, 97 F. Supp. 3d 1169, 1196 (S.D. Cal. 2015).

48. Hernandez exercised this First Amendment right when he sued the City of Othello.

49. The First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances." *McDonald v. Smith*, 472 U.S. 479, 482 (1985).

50. Hernandez exercised this right when he, through his agent and in person before the Adams County Commissioners on February 5, 2025, complained that Defendants were not complying with RCW 10.93.180(a)(iii) and petitioned Defendants to so comply.

51. The First Amendment protects the freedom of association including activity regarding "a wide variety of political, social, economic, educational, religious, and cultural ends." *Stephens v. Douglas Cnty. Fire Dist. No. 2*, 205 F. Supp. 3d 1233, 1241 (E.D. Wash. 2016)(First Amendment retaliation claim predicated on plaintiff's union association).

52. Hernandez had a right to associate with the Othello Police Department and not be retaliated against by Defendants because of that prior association.

53. A citizen's "threats to sue fall within the purview of the constitutionally protected right to file grievances." *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017)(citing *Hargis v. Foster*, 312 F.3d 404, 411 (9th Cir. 2002) (reversing summary judgment on a prisoner's First Amendment claim

COMPLAINT AND DEMAND FOR JURY TRIAL- 10

because "a jury could reasonably conclude that the prison officials acted unreasonably in characterizing [a prisoner's verbal threat to sue] as an attempt to coerce ...")).

54. Hernandez, via his agent, exercised his right to threaten to sue Defendants.

55. Defendant Flyct responded to Hernandez's agent's threat of litigation in a classic retaliatory manner a la "I would urge you to consider that your client's issues with the county are vastly different than those he had with the City of Othello. I worry, for your client's sake, that proceeding ahead with these threats will not be of any long-term benefit to a future career in law enforcement."

56. Hernadez never had "issues with the county."

57. Adams County never employed Hernadez.

58. Adams County never cited Hernadez for any civil or criminal infraction.

59. Up until threatening to exercise his First Amendment right to petition Adams County to comply with state law Hernandez was unaware of any "issues" he had "with the county."

60. Flyct's claim that Hernadez had "issues with the county" is false and pretextual.

61. Defendant Flyct retaliated against Hernandez by refusing to allow him to seek removal from the *Brady* list and by falsely claiming Hernandez had "issues with the county."

62. Defendant Adams County retaliated against Hernandez by refusing to allow him to seek removal from the *Brady* list.

COMPLAINT AND DEMAND FOR JURY TRIAL- 11

63. Defendants are final policy makers insofar as both are (a) aware of RCW 10.93.180(a)(1)(iii)'s requirement, (b) aware Defendants' non-compliance with said requirement harms Hernandez, (c) are intentionally and knowingly refusing to implement said requirement, and Defendant Adams County is ratifying Flyct's false and retaliatory claim Hernandez had "issues with the County."

64. Defendants' retaliatory actions, including but not limited to, refusal to implement RCW 10.93.180(a)(1)(iii)'s requirement is in retaliation for Hernandez's First Amendment activity set forth in the prior paragraphs and Defendants have no non-retaliatory justification to the contrary.

65. Defendants' actions would chill a person of ordinary firmness from engaging the protected activity in the future.

66. Hernandez's exercise of his First Amendment right and his protected activities, are and were a substantial or motivating factor in Defendants' retaliatory conduct.

67. As a consequence, Hernandez has suffered special and general damages for which he is entitled to recover.

### Cause of Action No. 2 – Violation of Due process – All Defendants

68. Regarding "procedural due process, property interests are created by a source independent of the Constitution, like state law." *Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cnty. Washington*, 447 F. Supp. 3d 1030, 1039 (E.D. Wash. 2020).

69. RCW 10.93.180(a)(1)(iii) is a state law mandating "each county prosecutor shall develop and adopt a written protocol addressing…what circumstances an officer's information or name may be removed from any list of potential impeachment disclosures."

COMPLAINT AND DEMAND FOR JURY TRIAL- 12

70. Indeed, "[w]hen state law describes the nature of the benefit, who is entitled to receive it, and under what circumstances they are entitled to receive it, a qualified plaintiff is more likely to have a legitimate claim of entitlement to that benefit." *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970).

71. Hernandez is a former law enforcement officer on the Adams County *Brady* list.

72. Hernandez has a liberty interest in his reputation and Hernandez's reputation is negatively affected by his placement on the *Brady* list.

73. RCW 10.93.180(a)(1)(iii) is to provide circumstances under which Hernandez's name could potentially be removed from the *Brady* list but Defendants refuse to disclose what said circumstances may be.

74. Clearly Defendants won't identify the circumstances under which Hernandez can be removed from the *Brady* list because, in doing so, they'd have to let Hernandez off the list given the referring agency's request he be removed from the list, the fact that the referring agency paid $350,000 to settle Hernandez's lawsuit, and the fact that Sheriff Snaza opined Hernandez's referral to Adams County for PID replacement violated policy.

75. Similarly, when the law "contains mandatory language that restricts the discretion" of the body administering the benefit, it is more likely that the benefit is a protected property interest. *Kraft v. Jacka*, 872 F.2d 862, 868 (9th Cir. 1989) *abrogated on other grounds by Dennis v. Higgins*, 498 U.S. 439, 442 n.2, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991).

76. Such is the case here. For RCW 10.93.180(a)(1)(iii) mandates "each county prosecutor shall develop and adopt a written protocol", Defendants are aware of said policy but refuse to implement it.

COMPLAINT AND DEMAND FOR JURY TRIAL- 13

77. "[P]rocedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation" of a protected interest. *Fields v. Dep't of Early Learning*, 193 Wash. 2d 36, 44 (2019). By failing to have any process or procedure through which Hernandez can be heard as to the removal of his name from the *Brady* list, his procedural due process rights under the Fourteenth Amendment have been violated.

78. Defendants' actions have caused Hernandez damage in an amount to be proven at trial.

### Cause of Action No. 3 - Negligence

79. Defendants have a duty to comply with RCW 10.93.180(a)(1)(iii).

80. Defendants have breached that duty by refusing to comply with it.

81. Defendants' breach of said duty has caused Hernandez to remain on the *Brady* list even though there is no legitimate business reason to keep him on the *Brady* list.

82. Defendants' actions have caused Hernandez harm in an amount to be proven at trial.

### V. PRAYER FOR RELIEF

Plaintiff respectfully prays for the following relief:

A. Compensation for all injuries and damages suffered including, but not limited to, both economic and non-economic damages, in an amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, adverse tax consequences of any award for economic damages, punitive damages, and general damages relating to emotional distress and mental anguish damages as provided by law.

B. Plaintiff's reasonable attorneys' fees and a multiplier to those fees, expert fees, and costs, pursuant to 42 U.S.C. § 1988.

COMPLAINT AND DEMAND FOR JURY TRIAL- 14

      C.      Injunctive relief requiring the Court order Adams County to bring its *Brady* policy into compliance with Washington law by incorporating a process by which a person, like Hernandez, can petition for removal from the *Brady* list.

      D.      For such other and further relief as this Court deems just and equitable.

Respectfully submitted this 19th day of March 2025.

                        */s Matthew Z. Crotty*
                        MATTHEW Z. CROTTY
                        Riverside NW Law Group, PLLC
                        905 West Riverside, Suite 208
                        Spokane, WA 99201
                        Telephone: 509.850.7011

                        Attorneys for Plaintiff